IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LUCY McKERNAN,** | **CASE NO. 1:20-CV-00032-PAB** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **CITY OF SEVEN HILLS, et al.,** | |
| | **MEMORANDUM OPINION AND** |
| **Defendants.** | **ORDER** |

Pending before the Court is Plaintiff Lucy McKernan's ("Plaintiff") Motion for Leave to File a Second Amended Complaint filed on January 24, 2023 ("Plaintiff's Motion"). (Doc. No. 50.) Defendant City of Seven Hills (the "City") filed a Brief in Opposition to Plaintiff's Motion on February 7, 2023 (Doc. No. 51), and Plaintiff filed a Reply on February 14, 2023 (Doc. No. 52).

For the reasons discussed below, Plaintiff's Motion is DENIED.

**I.  Background**

In November 2017, City of Seven Hills police officers arrested and charged Plaintiff with two violations of Ohio Revised Code § 1533.031, a state statute outlawing the prevention of hunting by creating noise or loud sounds.[1] (Doc. No. 19, ¶¶ 3-4.) In January 2018, Plaintiff entered a No Contest Plea in the Parma Municipal Court without a consent to a finding of guilt. (*Id.* at PageID# 65.) Her conviction was ultimately reversed in March 2019 by Ohio's Eighth District Court of Appeals, which

---

[1] Ohio Revised Code § 1533.031(A) provides: "No person shall purposely prevent or attempt to prevent any person from hunting a wild animal as authorized by this chapter by creating noise or loud sounds through the use of implements when the use of the implements is intended primarily to affect the behavior of the wild animal being hunted, when the hunting is taking place on lands or waters upon which the hunting activity may lawfully occur, and when the noise or loud sounds are created on lands or waters other than the lands or waters upon which the hunting activity may lawfully occur."

expressly declined to address the constitutionality of R.C. § 1533.031. (*Id.* at PageID# 65-66; *City of Seven Hills v. McKernan*, 124 N.E.3d 898, 900 (Ohio Ct. App. 2019)).

On January 8, 2020, Plaintiff filed an initial Complaint in this Court, naming only the City as a Defendant. (Doc. No. 1.) On September 18, 2020, in its Motion for Leave to Plead, the City noted that because Plaintiff was requesting a declaration that R.C. § 1533.031 was unconstitutional, the proper Defendant should have been the State of Ohio (the "State"). (Doc. No. 14.) On November 23, 2020, Plaintiff filed an Amended Complaint adding the State as a Defendant. (Doc. No. 19.) At the heart of McKernan's Amended Complaint was her assertion that R.C. § 1533.031 is unconstitutional and that the defendants should be enjoined from enforcing the statute. (*Id.* at ¶¶ 1-13.)

On March 19, 2021, the Court dismissed the State from the case due to Plaintiff's failure to effect timely service. (Doc. No. 27.) In April 2021, the State filed a Notice of Reservation of Rights, providing that the State had received notice of Plaintiff's constitutional challenge but that the "Attorney General has elected not to participate at this time." (Doc. No. 31.) The State reserved its right to seek leave to appear and be heard at a later time. (*Id.* at PageID# 120.)

Subsequently, Plaintiff and the City consented to the jurisdiction of Magistrate Judge Baughman and the case was transferred to his docket. (Doc. No. 33.) On June 8, 2021, Magistrate Judge Baughman *sua sponte* ordered that the State be joined as a necessary party under Rule 19. (Doc. No. 35.) On June 21, 2021, the State filed a Motion to Dismiss, asking that this Court either dismiss it as a party under Fed. R. Civ. P. 21 or dismiss Plaintiff's claims against it under Fed. R. Civ. P. 12(b)(1) and (6). (Doc. No. 38 at PageID# 136.) Neither Plaintiff nor the City filed any

opposition to the State's Motion to Dismiss.[2] On September 28, 2021, this Court dismissed Plaintiff's Amended Complaint as against the City holding that the State was entitled to sovereign immunity under the Eleventh Amendment and was therefore barred from suit in the instant case. (Doc. No. 42.)

On October 1, 2021, this case was transferred back to the docket of Magistrate Judge William H. Baughman, Jr. for further proceedings pursuant to the Plaintiff's and the City's prior consent to the jurisdiction of the Magistrate Judge and the Court's opinion dismissing the State. (Oct. 1, 2021 non-doc. Order.) No activity occurred on the docket again until Magistrate Judge Baughman's retirement on September 2, 2022, at which time the case was returned to this Court's docket for further proceedings. On September 6, 2022, the Court issued a Case Management Conference Scheduling Order setting a Case Management Conference for October 6, 2022. (Doc. No. 44.) The parties then failed to submit a Report of Parties' Planning Meeting in accordance with the Scheduling Order. On September 30, 2022, the Court issued an Order directing the parties to submit a Report of Parties' Planning Meeting upon receipt of the Order. (Sept. 30, 2022 non-doc. Order.) The parties failed to do so. On October 3, 2022, the Court again issued an Order directing the parties to submit a Report of Parties' Planning Meeting, this time by noon on October 4, 2022. (Oct. 3, 2022 non-doc. Order.) In this Order, the Court warned the parties that failure to abide by the Court's Order could result in cancellation of the Case Management Conference and/or an issuance of an Order to Show Cause why the matter should not be dismissed for failure to prosecute. (*Id.*) The parties again failed to do file a Report of Parties' Planning Meeting.

---

[2] On June 25, 2021, the State moved to vacate a prior Order referring the case to the Magistrate Judge, because the State had not consented to the Magistrate Judge's jurisdiction. (Doc. No. 39.) Plaintiff filed no opposition to that motion and the Magistrate Judge granted the State's motion and returned the case to this Court's docket. (Doc. No. 41.)

On October 4, 2022, the Court cancelled the Case Management Conference and ordered the parties to show cause within seven (7) days of the date of the Order as to why they had not complied with the Court's orders, or the Court would dismiss the case without prejudice for failure to prosecute. (Oct. 4, 2022 non-doc. Order.) That same day, the Court received a letter from Plaintiff requesting the appointment of pro bono counsel noting her attorney's perpetual failures to respond to her or the Court. (Doc. No. 45.) The Court then set a status conference with counsel and the parties for October 19, 2022. (Oct. 5, 2022 non-doc. Order.)

On October 19, 2022, a telephone status conference was held. (Doc. No. 46.) Participating in the call were Plaintiff Lucy McKernan, and Attorney Patrick DiChiro, on behalf of Defendant. (*Id.*) Attorney for Plaintiff, Gary H. Levine did not participate. (*Id.*) Attorney DiChiro reported to the Court that he had spoken with Attorney Levine at some point, either in 2022 or late 2021, to determine if this case involved monetary damages, but had not heard from Attorney Levine since. (*Id.*) A. (*Id.*)

The Court next addressed Plaintiff's letter to the Court requesting the appointment of pro bono counsel. (*Id.*) The Court recognized that Attorney Levine had been unresponsive to Plaintiff's attempts at communication and had failed to abide by a multitude of this Court's orders. (*Id.*) The Court advised Plaintiff that based upon her Affidavit of Need submitted with her letter, however, she did not meet the qualifications for the appointment of pro bono counsel. (*Id.*) Plaintiff informed the Court that she did not want to proceed with Attorney Levine as counsel, as she did not trust him to do the work needed unless he was supervised. (*Id.*) The Court then terminated Attorney Levine's representation of Plaintiff. (*Id.*) The Court also informed Plaintiff that she may proceed with her case *pro se*. (*Id.*) Plaintiff requested time to decide if she would proceed with her case *pro se*, or

4

with newly secured counsel. (*Id.*) The Court then set a telephone status conference for November 28, 2022, at which time Plaintiff would be required to advise the Court of her decision to proceed *pro se* or with newly secured counsel. (*Id.*) The Court informed Plaintiff that if she chose not to proceed, the case would be dismissed without prejudice. (*Id.*)

On November 29, 2022, the Court conducted another status conference. (Nov. 28, 2022 non-doc. Order.) Participating were Plaintiff Lucy McKernan and Attorney Karen Kahle, and participating on behalf of the City were Attorneys Eric. J. Moore and Patrick DiChiro. (*Id.*) Attorney Kahle requested time to file a notice of appearance after Plaintiff represented to the Court that Attorney Kahle would be representing her in this matter. (*Id.*) The Court gave Attorney Kahle until December 6, 2022 to file her notice of appearance. (*Id.*) Since Attorney Kahle requested some time to familiarize herself more with the record in this case, and to discuss it with counsel for Defendant, the Court set another telephone status conference for January 10, 2023. (*Id.*) On December 2, 2022, Attorney Kahle filed a Notice of Appearance. (Doc. No. 48.)

On January 11, 2023, the Court conducted another status conference. (Jan. 11, 2023 non-doc. Order.) Participating on behalf of Plaintiff was Attorney Karen Kahle and participating on behalf of Defendant were Attorneys Eric J. Moore and Patrick DiChiro. (*Id.*) Plaintiff's counsel conceded that Plaintiff's Amended Complaint did not set forth a claim under 42 U.S.C. § 1983, although she asserted that the Civil Cover Sheet included a citation to that statute as the U.S. Civil Statute under which Plaintiff was filing the Complaint. (*Id.*) Plaintiff's counsel requested leave to file a motion for leave to file a motion to amend her Amended Complaint. (*Id.*) The Court granted Plaintiff's request and set deadlines for such a filing and any opposition thereto. (*Id.*)

5

On January 24, 2023, Plaintiff filed the instant Motion for Leave to File Second Amended Complaint. (Doc. No. 50.) In support of her Motion, Plaintiff attached a proposed Second Amended Complaint ("SAC"). (Doc. No. 50-1.) The SAC proposes the addition of two new Defendants: Michael Greer and John Doe, two of the City's police officers. (*Id.*) The SAC also proposes the addition of a § 1983 claim (Count One):

> 17. Acting under color of state law, the City of Seven Hills, City police, City prosecutor, municipal court, Officer Michael Greer and/or Officer John Doe, all violated Plaintiff's Federal constitutional rights, by unreasonably detaining and arresting her without probable cause, and charging, convicting and criminally sentencing her under a constitutionally invalid statute, all in violation of both her First and Fourth Amendment rights.
>
> 18. Plaintiff was specifically targeted, arrested, and criminally charged by the City police for exercising her First Amendment rights, because of her alleged anti-hunting beliefs.
>
> 19. The foregoing violations resulted in both economic and non-economic damages to Plaintiff.

(*Id.* at 3-4.) Count Two of the SAC remains a claim for Declaratory Relief seeking "a declaration by this Court that ORC §1533.031(A) violates the Federal constitution by violating the First and Fourteenth Amendment rights of non-hunters who attempt to 'spook' prey when it is the object of a hunt." (*Id.* at 4.) On February 7, 2023, the City filed a Brief in Opposition to Plaintiff's Motion (Doc. No. 51), to which Plaintiff filed a Reply on February 14, 2023 (Doc. No. 52). Plaintiff's Motion is now ripe for a decision.

## II.     Standard of Review

A party may amend its pleading once as a matter of course within twenty-one days after serving it or within twenty-one days after service of a responsive pleading or motion. Fed. R. Civ. P.

15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Pursuant to Rule 15(a)(2), a court "should freely give leave [to amend] when justice so requires." *Id.*; *see also Morse v. McWhorter*, 290 F.3d 795, 799-800 (6th Cir. 2002) ("Generally, leave to amend is 'freely given when justice so requires.'" (quoting *Keweenaw Bay Indian Cmty. v. State of Mich.*, 11 F.3d 1341, 1348 (6th Cir. 1993))). "Though the decision to grant leave to amend is committed to the trial court's discretion, that discretion is limited by Fed.R.Civ.P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987). However, "[a] motion for leave to amend the complaint may be denied when the motion is the product of undue delay, bad faith, or dilatory motive, amendment would cause undue prejudice to the opposing party, the plaintiff repeatedly failed to cure deficiencies in the complaint with previous amendments, or amendment of the complaint would be futile." *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 443 (6th Cir. 2014).

### III. Analysis

The City argues that Plaintiff's Motion should be denied because the SAC (1) is a "product of undue delay, bad faith[,] and dilatory motive"; (2) would cause undue prejudice to the City; and (3) is futile. (Doc. No. 51 at 1.) The City further argues that Plaintiff has "repeatedly failed to cure deficiencies in the [C]omplaint with previous amendments in this case." (*Id.*)

The Court will first address the City's main argument that the filing of the SAC is futile since this issue is dispositive of Plaintiff's Motion. As to the proposed § 1983 claim against the City, the City argues that the filing of the SAC would be futile because it fails to state a viable § 1983 claim. (*Id.* at 3-4.) The City argues that municipalities can only be liable under § 1983 via "a *Monell* claim

7

that a policy, practice, or custom was the driving force behind a constitutional violation." (*Id.* at 3.) The City argues that no *Monell* allegations exist in the SAC, and that no *Monell* allegations were set forth in the original or Amended Complaint. (*Id.*) Further, the City argues that even if the SAC had stated a proper *Monell* claim, the claim would nevertheless be barred by the statute of limitations. (*Id.* at 3-4.)

Plaintiff argues that the "underlying criminal case record suggests that the Defendant City had a policy of targeting individuals who philosophically oppose hunting, a policy which led directly to Plaintiff's civil rights deprivations." (Doc. No. 52 at 1.) Plaintiff then points to two statements made by the City's prosecutor during Plaintiff's plea hearing and in the police report in Plaintiff's underlying criminal case as evidence of the existence of a *Monell* claim. (*Id.* at 2.) First, Plaintiff references the statement that the permitted bow hunter had been "following [instructions] to notify police if anyone attempted to prevent him from hunting." (*Id.*) Then, Plaintiff references the statement that the police officers were familiar with Plaintiff from previous contacts with her and her "disagreement with bow hunting." (*Id.*)

The Court finds that the filing of the SAC would be futile as against the City because the SAC fails to state a viable § 1983 claim against it. It is well established that an institution may not be sued for injuries inflicted solely by its employees or agents under § 1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978); *see also Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2015); *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014); *Heyerman v. Cty. of Calhoun*, 680 F.3d 642 (6th Cir. 2012). Rather, a plaintiff may only hold a defendant entity liable under § 1983 for the entity's own wrongdoing. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) ("Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat*

*superior*."). Or, as the Sixth Circuit has explained, "a municipality is liable under § 1983 only where, 'through its deliberate conduct,' it was 'the 'moving force' behind the injury alleged.'" *D'Ambrosio*, 747 F.3d at 388-89 (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (citation omitted)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To properly allege an institutional liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Here, Plaintiff's citation to two comments by the City's prosecutor is not enough to adequately allege a *Monell* claim against the City. More importantly, however, those allegations do not exist in the SAC. The proposed § 1983 claim simply references the conduct of the police officers and that "Plaintiff was specifically targeted, arrested, and criminally charged by the City police for exercising her First Amendment rights, because of her alleged anti-hunting beliefs." (Doc. No. 50-1, ¶ 18.) That is not enough. The SAC fails to allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *See Burgess*, 735 F.3d at 478.

Accordingly, the Court finds that the filing of the SAC against the City would be futile.

As for Officer Greer and John Doe, the City argues that the filing of the SAC would be futile because the SAC "does not alleged a wrongful arrest under the Fourth Amendment and/or violation of free speech rights under the First Amendment." (Doc. No. 51 at 4-5.) The City further argues that the statute of limitations has run on such a claim and Rule 15 of the Federal Rules of Civil Procedure does not allow for the amendment of pleadings to relate back when new parties are added. (*Id.* at 4-5.) Plaintiff argues that adding the City's police officers as defendants satisfies the requirements of Federal Rule of Civil Procedure 15(c)(1)(C). (Doc. No. 52 at 1-3.) Plaintiff argues that Rule 15 is satisfied because "knowledge of the lawsuit by the involved officers can safely be implied" based on the "relatively small size of the Police Department, and the fact that actions of two of its officers are the subject of this pending action." (*Id.* at 3.)

The Court finds that the filing of the SAC against Officer Greer and John Doe would be futile because the statute of limitations has expired. In Ohio, the statute of limitations for § 1983 actions is two years. *See LRL Props. v. Portage Metro. Housing Auth.*, 55 F.3d 1097, 1105 (6th Cir. 1995); *Williams v. Schismenos,* 258 F. Supp. 3d 842, 853 (N.D. Ohio 2017). Plaintiff was arrested on November 22, 2017, and her convictions were reversed and vacated on March 21, 2019. (Doc. No. 50-1.) Thus, the two years statute of limitations has expired.

Moreover, the Court finds that Rule 15(c)(1)(C) does not save Plaintiff's claims against Officer Greer and John Doe. Federal Rule of Civil Procedure 15(c) provides, in relevant part, as follows:

> **(c) Relation Back of Amendments.**
>
> > **(1) When an Amendment Relates Back.** An amendment to a pleading relates back to the date of the original pleading when:
> >
> > > \* \* \*

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). In the Sixth Circuit, courts interpret Rule 15(c)(1)(C) "strictly." *See Brown v. Cuyahoga Cnty.*, 517 F. App'x 431, 435 (6th Cir. 2013); *North v. Cnty. of Cuyahoga*, 2017 WL 3065502, at *8 (N.D. Ohio July 19, 2017).

Here, Plaintiff is not changing the party or the naming of the party, as allowed under the Rule, but, in fact, adding two new parties, which is not allowed under the Rule. As the Sixth Circuit has held, Rule 15(c) "allows relation back for the mistaken identification of defendants, not for defendants to be named later through 'John Doe,' 'Unknown Defendants' or other missing appellations." *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012). And, "absence of knowledge is not a mistake." *Brown*, 517 F. App'x at 433-34.

The Sixth Circuit has specifically found that the substitution of a "John Doe" defendant with a named party is not a "mistake concerning the proper party's identity" for purposes of Rule 15(c)(1)(C)(ii) but is, instead, an addition of a new party. *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 319 (6th Cir. 2010); *see also Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (holding that substituting a named defendant for a "John Doe" defendant is considered an addition of

11

parties rather than a mere substitution of parties). The term "mistake" as used in Rule 15(c)(1)(C)(ii) means an actual mistake, not an absence of knowledge. *See Brown*, 517 F. App'x at 434-35; *North*, 2017 WL 3065502, at *8. As the Sixth Circuit has explained, this understanding of the Rule prevents "eleventh-hour lawsuits with placeholder defendants designed to frustrate the operation of a statute of limitations." *Brown*, 517 Fed. Appx. at 435 (citing Cox, 75 F.3d at 240).

In *Smith v. City of Akron*, for example, the plaintiff named John and Jane Doe Nos. 1-10 as defendants in his complaint and then, after the statute of limitations had expired, amended his complaint to identify or name two of the defendants. 476 F. App'x at 68-69. The Sixth Circuit concluded that the plaintiff's time to amend his complaint under Rule 15 had expired and the plaintiff could no longer state a claim against the unnamed defendants. *Id.* at 69 ("Because he waited until the last day of the two-year limitations period to file his complaint, that left no time to discover the identity of his arresting officers within the relevant time."). Accordingly, the court affirmed the dismissal of the complaint against the newly named defendants on statute of limitations grounds.

Here, by not initially naming Officer Greer and attempting to now name John Doe, well beyond the statute of limitations, Plaintiff's claims cannot "relate back" under Rule 15. Indeed, this is not even a situation where Plaintiff named any John Doe as a placeholder within the two-year statute of limitations, and then sought to substitute a named individual for any John Doe defendant. Thus, Plaintiff's claims against Officer Greer and John Doe are time barred. Accordingly, the Court determines that the filing of the SAC against these new defendants would be futile.

## IV. Conclusion

Accordingly, for the reasons set forth above, Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. No. 50) is hereby DENIED.

**IT IS SO ORDERED.**

                                          *s/Pamela A. Barker*
                                          PAMELA A. BARKER
Date: April 4, 2023                U.S. DISTRICT JUDGE